OPINION OF THE COURT
Thomas E. Mercure, J.
Petitioner, current owner and operator of the Sagamore Hotel, seeks to annul a determination of the respondent, Adirondack Park Agency (hereafter APA or Agency), which partially granted petitioner’s application to amend certain conditions of previous Agency permits issued to it or its predecessors-in-interest relative to the use and application of pesticides on its golf course.
Prior to 1982, the subject property, consisting of the hotel facilities on Green Island and the golf course on Federal Hill, was owned by the Saggolf Corporation, although the hotel was closed in 1980. In 1982, Norman Wolgin contracted to purchase the property from Saggolf and also applied to the Agency for a permit to renovate and expand the facilities on Green Island and on Federal Hill, under project number 82-71, a class A regional project. The Agency held hearings on the application and on January 23, 1983, issued permit No. 82-71, subject to several conditions. The renovation of the golf course on Federal Hill was a major component of the permit. In finding of fact No. 158, the Agency found that the applicant’s proposal to use pesticides on Federal Hill constituted an adverse environmental impact. Consequently, the Agency inserted condition 12 in permit No. 82-71, which states:

"Pesticides and Herbicides

"12. Peticides shall not be used on Green Island (except as a part of interior operations and maintenance) or within 200 feet of any body of water at Federal Hill without prior Agency approval.”
Subsequently, Wolgin and other persons, now known in the aggregate as Green Island Associates, the petitioner herein, submitted plans as required by permit No. 82-71 for, among other things, renovation of the golf course. On November 10, 1983, the Agency issued permit No. 82-71-1 for the renovation pursuant to these plans. The Agency included in permit No. 82-71-1 special condition 14, which states: "14. Pesticides shall not be used on Green Island (except inside buildings) and shall *1023 not be used within 200 feet of any body of water or wetland on Federal Hill.”
According to the APA, the insertion of the words "or wetland” in this condition reflects its adoption of regulations contained in 9 NYCRR part 578, effective May 1, 1983, which implement the Agency’s administration of the Freshwater Wetlands Act (ECL art 24) within the Adirondack Park pursuant to title 8 thereof. The court has no reason to question the validity of this assertion.
On May 20, 1984, the Agency issued amendatory permit No. 82-71-1 A, which authorized Wolgin and petitioner to undertake additional alterations of a stream bed on the golf course to improve stream flow. Special condition 7 of the permit states: "All facts, terms and conditions pursuant to Permit No. 82-71-1 shall fully apply as amended by the facts and conditions set forth herein.”
On August 10, 1984, Wolgin and petitioner applied to amend condition 12 of permit No. 82-71 and special condition 14 of permit No. 82-71-1 to permit the use of 22 pesticides within the 200-foot buffer areas around the water bodies and wetlands on the golf course. The Agency, in a letter dated August 21, 1984, informed the attorney for the applicant that this application involved a material change in permit conditions and would, therefore, be processed as a new application, project No. 84-1048, in conformity with the provisions of Executive Law § 809 (8) (b) (2) and 9 NYCRR 572.19 (c) of the Agency regulations.
On April 12, 1985, the Agency determined the application for project No. 84-1048 to be complete and available for public comment. At its April 1985 meeting, the Agency determined to hold a public hearing on the application and on June 4, 1985, issued its notice to proceed to such a hearing. The hearings were held on July 8, 9, 23 and 24, 1985. At its August 1985 meeting, the Agency considered the hearing record on project No. 84-1048, and on August 23, 1985 determined to partially grant the application by allowing the use of three of the requested pesticides within 200 feet of the water bodies and wetlands on the golf course for a period of three years. It denied the application with respect to the other 19 pesticides after finding that their proposed use would have an undue adverse impact on the natural resources of the Adirondack Park and the values and functions of wetlands on the golf course. On September 16, 1985, the Agency issued permit *1024 No. 84-1048 authorizing use of the three pesticides, subject to special conditions 6 through 10 thereof.
The within proceeding was commenced on or about October 19, 1985. The petition raises, in all, six claims for relief, as follows:
1. Since ECL 33-0303 (1) vests exclusive jurisdiction in the Commissioner of Environmental Conservation regarding, inter alia, the use of pesticides, the Agency exceeded its jurisdiction.
2. The Agency’s review of petitioner’s pesticide proposal is the review of a preexisting land use and development, and, thus, the Agency exceeded its jurisdiction.
3. Petitioner’s pesticide proposal constitutes "landscaping and ordinary repair and maintenance of an existing use” and not a "project”, and the Agency accordingly exceeded its jurisdiction.
4. The Agency is purportedly asserting wetlands jurisdiction over bodies of water which are not "wetlands”.
5. The Agency violated petitioner’s rights to due process and equal protection by receiving only a portion of the hearing record prior to its deliberations and also by engaging in ex parte communications with Agency staff members who were involved in the staff position with respect to petitioner’s pesticide proposal.
6. The Agency’s actions were made in excess of its jurisdiction, violated lawful procedure, were affected by errors of law, were arbitrary and capricious and an abuse of discretion.
In its answer, the Agency denied the merits of petitioner’s factual and legal allegations and raised affirmative defenses and objections in point of law as follows:
1. Petitioner’s failure to comply with special condition 8 of permit No. 84-1048 voids the permit, thereby rendering this proceeding moot.
2. Petitioner’s challenge to the Agency’s jurisdiction to determine its application to amend previous permits issued to it in order to use 22 pesticides in the 200-foot buffer areas on the golf course is barred by the applicable Statute of Limitations.
3. Petitioner’s challenge to Agency jurisdiction must be dismissed also because petitioner is guilty of laches.
4. Those portions of petitioner’s six claims for relief alleging the Agency’s actions in issuing permit No. 84-1048 to be *1025 arbitrary, capricious, affected by error of law and an abuse of discretion must be dismissed because they fail to state a cause of action.
THE JURISDICTION OF THE APA TO REGULATE THE USE OF PESTICIDES WITHIN THE ADIRONDACK PARK
The foundation of petitioner’s assertion of nonjurisdiction is ECL 33-0303 (1) which states as follows: "Jurisdiction in all matters pertaining to the distribution, sale, use and transportation of pesticides, is by this article [ECL art 33] vested exclusively in the commissioner [of environmental conservation].”
Thus, the argument follows, the field of pesticide control has been wholly preempted, as a result of which the APA has no authority to require or issue permits for the use of pesticides within the Adirondack Park or elsewhere. I disagree.
As quite properly argued by the APA, the jurisdiction of the Commissioner of Environmental Conservation over freshwater wetlands under ECL article 24 has been delegated to it with respect to wetlands situate within the Adirondack Park (ECL art 24, tit 8). This delegation includes jurisdiction to prevent "any form of pollution” (ECL 24-0107 [8]; 24-0701 [2]). The direct application of pesticides or runoff containing them would be a form of pollution and a regulated activity requiring a permit if occurring within or adjacent to a freshwater wetland (6 NYCRR 663.4 [d]). Further, the APA’s implementation of ECL article 24 commenced on May 1, 1983, the effective date of its freshwater wetland regulations (9 NYCRR part 578). Pursuant to 9 NYCRR 578.2, no person can undertake a "regulated activity” within a freshwater wetland without first obtaining an Agency permit; "regulated activity” includes "any form of pollution” whether or not occurring within a wetland (9 NYCRR 578.3 [n] [2]) and the impacts of regulated activities such as "any form of pollution” include the "application of pesticides and other chemicals” (9 NYCRR 578.8 [i]).
To argue, as does petitioner, that the APA, empowered (and burdened with the responsibility) to protect wetlands within the park from pollution, enjoined from approving a project unless it would not have an undue adverse impact upon the resources of the park, and in fact, created for the very purpose of protecting the natural resources of the park, is prohibited from regulating the use of potent chemicals in or adjacent to ecologically fragile wetlands within the park, is ludicrous. *1026 There is no question, and the court so holds, that the statutory delegation of authority contained in ECL 24-0801 and 24-0803 carries with it a grant of authority to regulate the use of pesticides in or adjacent to wetlands, as the latter term is defined in Executive Law § 802 (68).
TIMELINESS OF THE JURISDICTIONAL CHALLENGE
The APA asserts that petitioner’s challenge to its jurisdiction to regulate pesticide use at Federal Hill is barred by the Statute of Limitations and the equitable doctrine of laches. Although the distinction between laches, estoppel and the expiration of the applicable Statute of Limitations is at times not entirely clear, it is clear that petitioner’s challenge is untimely.
As earlier noted, the APA exercised jurisdiction over pesticide use at Federal Hill in its consideration of petitioner’s initial permit application in 1982, and, in fact, permit No. 82-71 barred use of pesticides on Federal Hill within 200 feet of any body of water. Petitioner did not assert the Agency’s lack of jurisdiction in connection with its permit review and it did not seek Agency reconsideration of the action or judicial review following issuance of the permit thereon. Similarly, in its 1983 application to modify the provisions of permit No. 82-71 under permit application No. 82-7-1, no jurisdictional challenge was raised and no reconsideration or judicial review was sought of the permit issued thereon, which barred pesticide use within 200 feet of any body of water or wetland on Federal Hill.
In fact, in its brief to the Agency with respect to project No. 84-1048, filed August 10, 1984, counsel for the petitioner candidly acknowledges its prior submission to Agency jurisdiction for tactical reasons in stating:

"A Comment on Jurisdiction

"On advice of counsel, for over one year [footnote omitted] the project sponsor has cooperated with the Agency in attempting to get the Agency’s approval of a golf course maintenance program even-though [sic] it was clear to both the project sponsor and its counsel that the Agency was overreaching its jurisidiction. Project sponsor saw no reason to resist the Agency since counsel advised that it was merely a matter of going through the Agency’s cumbersome and arcane procedures to reach a reasonable result. This turns out to have been a misjudgment on counsel’s part”.
*1027 In defense of the contention of untimeliness, petitioner asserts, first, that the administrative acts complained of occurred in 1985 and that the proceeding is, accordingly, timely. The basis for this argument is that the 1984 application, assigned project No. 84-1048, was treated by the APA as a new project and, as a result, the August 23, 1985 APA resolution was a new, independent action and not a rehearing decision. Similarly, it is argued, the permit issued by the APA was a completely new and independent permit and not a renewal or reissuance of an old permit. Although superficially appealing, the argument places form over substance to an unacceptable and, perhaps, unprecedented extent.
It is abundantly clear that petitioner’s 1984 application intended to and did seek a modification of the conditions of permits Nos. 82-71 and 82-71-1 prohibiting the use of pesticides within 200 feet of any body of water or wetland on Federal Hill. In fact, the very first paragraph of project and permit No. 84-1048, annexed as exhibit "A” to the petition herein, so states. It is equally clear that the Agency processed the application as a "new application” only because of the mandate of Executive Law § 809 (8) (b) (2) and 9 NYCRR 572.19 (c) due to the fact that the application involved a material change in existing permit conditions. It cannot be seriously argued that the assignment of a new permit number somehow magically transformed the application into something other than an application for a modification of the prior permit conditions.
A subsequent application for reconsideration or modification will not have the effect of commencing the applicable Statute of Limitations anew (see, Matter of Lubin v Board of Educ., 60 NY2d 974, rearg denied 61 NY2d 905, rearg denied 62 NY2d 803, cert denied 469 US 823; Matter of De Milio v Borghard, 55 NY2d 216). Clearly, the issuance of permit No. 82-71 on January 23, 1983 commenced the running of the 60-day Statute of Limitations (Executive Law § 818 [1]) as to any challenge to the prohibition of pesticide use within 200 feet of any body of water on Federal Hill, and the issuance of permit No. 82-71-1 on November 10, 1983 commenced the running of the limitations period as to any challenge to the prohibition of pesticide use within 200 feet of any wetland on Federal Hill. The court does not address the issue of whether Executive Law § 818 (1) (60 days) or ECL 24-0705 (6) (30 days) governs the latter permit as the instant application was time barred in either event.
*1028 Second, petitioner argues that, in any case, an administrative agency cannot use the Statute of Limitations as a shield to protect acts which are void for want of jurisdiction. This is, as a general statement, correct. However, the argument overlooks the critical distinction between action of an agency without jurisdiction and action of agency in excess of its lawful jurisdiction. There is absolutely no question that the Agency had review jurisdiction over petitioner’s projects. In fact, there is no argument to the contrary. The only issue is whether, in fixing the conditions contained in the subject permits relative to pesticide use, the Agency acted in excess of its jurisdiction. In such a case, the applicable Statute of Limitations will be enforced (see, Matter of Public Serv. Commn. v Rochester Tel. Corp., 55 NY2d 320). Accordingly, the court finds petitioner’s application to be time barred.
In summary, I find that the Agency did not exceed its jurisdiction, having the authority to regulate the use of pesticides in or adjacent to wetlands. Petitioner’s claims for relief alleging the Agency’s actions to be arbitrary, capricious, affected by error of law and an abuse of discretion must be dismissed because they fail to state a cause of action. Moreover, petitioner’s application is time barred in any event. The remaining contentions need not be addressed.
The petition is dismissed.